IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VERONICA LYN JONES,                        6:13-cv-00843-BR

        Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

        Defendant.


**ALAN STUART GRAF**
Alan Stuart Graf P.C.
208 Pine St.
Floyd, VA 24091
(540)745-2519

        Attorneys for Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**JORDAN D. GODDARD**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2531

          Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Veronica Lyn Jones seeks judicial review of a

final decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's applications

for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act and Supplemental Security Income (SSI)

payments under Title XVI.

     This Court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g).  Following a thorough

review of the record, the Court **AFFIRMS** the Commissioner's final

decision and **DISMISSES** this matter.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on October 9, 2009. Tr. 24.[2] The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on January 8, 2012. Tr. 39. At the hearing Plaintiff was represented by an attorney. Tr. 39. Plaintiff and a Vocational Expert (VE) testified at the hearing. Tr. 40-89.

The ALJ issued a decision on February 15, 2012, in which he found Plaintiff was not disabled and, therefore, is not entitled to benefits. Tr. 34. That decision became the final decision of the Commissioner on March 14, 2013, when the Appeals Council denied Plaintiff's request for review. Tr. 1.

## BACKGROUND

Plaintiff was born on July 30, 1965, and was 44 years old at the time of the hearing. Tr. 32, 163. Plaintiff completed high school and some college courses. Tr. 45. She has past work experience as a call-center worker/telemarketer, customer-service representative, and call-center supervisor. Tr. 32, 76.

Plaintiff alleges she has been disabled since October 9, 2009, due to "back," arthritis, high-blood pressure, "leg sores," depression, and severe headaches. Tr. 177.

---

[2] Citations to the official transcript of record filed by the Commissioner on December 19, 2013, are referred to as "Tr."

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 21-28.


**STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might

accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a "mere scintilla" of evidence but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648

F.3d 721, 724 (9th Cir. 2011).  *See also Parra v. Astrue*, 481
F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920.
Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See
also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner
determines the claimant does not have any medically severe
impairment or combination of impairments.  20 C.F.R. §§ 404.1509,
404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d
at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648
F.3d at 724.  The criteria for the listed impairments, known as
Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a

6 - OPINION AND ORDER

regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.

*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since October 9, 2009, her alleged onset date.  Tr. 26.

At Step Two the ALJ found Plaintiff has the severe impairments of obstructive sleep apnea, morbid obesity, mild lumbar spondylosis, and major depressive disorder.[3]  Tr. 26.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 23.  The ALJ found Plaintiff has the RFC to perform sedentary work with the functional limitations of

> lifting and carrying of 10 pounds occasionally and less than 10 pounds frequently, standing and walking two hours of an eight hour workday and sitting six hours of an eight hour workday.  She can occasionally climb

---

[3] The Court notes the ALJ based his findings as to these impairments on the medical diagnoses of Plaintiff that appear in the record rather than statements in Plaintiff's applications.  *See* Tr. 26, 177.

8 - OPINION AND ORDER

stairs and ramps, balance, stoop, kneel, crouch, or
crawl and never climb ladders, ropes or scaffolds.  She
is to avoid even moderate exposure to unprotected
heights and moving/dangerous machinery.  The claimant
can perform unskilled work (routine, repetitive tasks
with simple instructions) with occasional public
contact.

Tr. 29.

At Step Five the ALJ found Plaintiff could perform jobs that
exist in significant numbers in the national economy such as a
clerical addresser, credit clerk, and telephone operator for a
business answering service.  Tr. 30.  Accordingly, the ALJ found
Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred by (1) improperly rejecting
the opinions of examining physicians Paul C. Coelho, M.D., and
Pamela R. Roman, Ph.D,[4] and (2) improperly rejecting Plaintiff's
testimony.

## I.    Medical Opinion Testimony

Plaintiff contends the ALJ failed to fully credit the
opinions of Drs. Coelho and Roman.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes findings setting forth specific,

---

[4] According to the parties, Dr. Roman was formerly
Dr. Joffe.  *See* Tr. 220-25 (record signed as Dr. Joffe); 346-47
(record signed as Dr. Roman).

legitimate reasons for doing so that are supported by substantial evidence in the record. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir. 1995)).  The opinion of a treating physician is "given greater weight than the opinions of other physicians." *Kelly v. Astrue,* No. 10–36147, 2012 WL 767306, at *1 (9th Cir. 2012)(quoting *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). *See also Garrison v. Colvin*, No. 12-CV-15103, 2014 WL 3397218, at *13 (9th Cir. 2014).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831).  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g., Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

10- OPINION AND ORDER

1198 (9th Cir. 2008).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  *See also Simpson v. Astrue*, No. 10-cv-06399-BR, 2012 WL 1340113, at *5 (D. Or. Apr. 18, 2012).

### A.   Dr. Coelho

Plaintiff was referred by Disability Determination Services (DDS)[5] to Dr. Coelho for a comprehensive orthopedic evaluation to assess Plaintiff for back pain, arthritis, and back sores.  The evaluation took place on December 21, 2009.  Tr. 214-18.

Dr. Coelho noted Plaintiff is "morbidly obese" and that her "affect is somewhat flat, although there are no overt pain behaviors."  Tr. 215.  Dr. Coelho examined Plaintiff's vascular system, range of motion, and lower extremities and performed a functional evaluation.  Dr. Coelho noted Plaintiff is able to lift, to grasp, and to manipulate small objects with her hands; her gait is nonantalgic (although she is obese and waddles "somewhat"); her straight-raise leg test was "negative bilaterally"; and her mental status was intact.  Tr. 216. Dr. Coelho also reviewed a "lumbar AP and lateral plain film

---

[5]   DDS is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

series" of Plaintiff's back.  Tr. 217.

Dr. Coelho diagnosed Plaintiff with lumbar spondylosis, lumbago, bilateral sciatic pain, morbid obesity, venostasis ulcers in the left leg, depression, and sleep apnea.  Tr. 217.

Dr. Coelho opined Plaintiff's obesity and lumbar spondylosis are "certainly likely to . . . limit her ability to stand and walk for anything more than 10-15 minutes . . . [but] should not limit her ability to lift and carry items which weigh 10-15 pounds."  Tr. 217.  Dr. Coelho also "suspected" Plaintiff's sciatic pain is due to lumbar spinal stenosis, but he was unable to confirm this suspicion in light of the lack of a "lumbar MRI" or "axial CT."  Tr. 217-18.  He, nevertheless, opined "the posterior bridging osteophytes seen at L3-4 is [*sic*] in a position to encroach upon the spinal canal and may be related to the patient's bilateral sciatic symptoms."  Tr. 217-18. Dr. Coelho opined "[t]his would also limit [Plaintiff's] ability to stand, walk, and sit for prolonged periods of time."  Tr. 217-18.  Accordingly, Dr. Coleho "suspect[ed] that [Plaintiff] could do so for no more than 10-15 minutes at a time, without a position change."  Tr. 218.

Dr. Coelho opined Plaintiff's venostasis ulcers are likely to be functionally limiting if she has to sit or stand for more than two hours at a time throughout the day.  Tr. 218.

The ALJ gave "no weight" to the opinion of Dr. Coelho

because "the only imaging is quite benign and neurological examinations [are] negative," and they undermine Dr. Coelho's conclusion that Plaintiff has lumbar spondylosis and bilateral sciatic pain.  Tr. 31.  Moreover, although Dr. Coelho opined Plaintiff's ability to sit, to stand, or to walk is limited "for any significant intervals", the ALJ observed at the hearing that Plaintiff sat "for a full hour without a single change of positions and did not exhibit any pain behaviors."  Tr. 31.  In addition, despite Plaintiff's complaints of pain, the ALJ noted the medical record shows Plaintiff had only been taking prescription-level ibuprofen for approximately one year and tramadol for two weeks, and the record contains little evidence of Plaintiff seeking treatment for her alleged pain.  Tr. 31.

The Court concludes on this record that the ALJ did not err when he did not give any weight to the opinion of Dr. Coelho because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.    Dr. Roman**

Plaintiff was referred to Dr. Roman by Oregon Department of Human Services for a psychodiagnostic evaluation, which took place on December 28, 2009.  Tr. 220-25.

Dr. Roman's evaluation consisted of a clinical interview of Plaintiff and a series of tests that included the Wechsler Memory Scale, Revised (WMS-R); the Wechsler Adult Intelligence Scale,

Third Edition (WAIS-III); the Woodcock-Johnson III, Test of
Achievement; and the Beck Depression Inventory - Second Edition
(BDI-II).

Dr. Roman gave Plaintiff Axis I diagnoses of major
depressive disorder, recurrent, severe, without psychotic
features and "Partner Relational Problem"; an Axis II diagnosis
of "Rule Out . . . Borderline Intellectual Functioning"; an Axis
III diagnoses of obesity, sleep apnea, hyperlipidemia, high blood
pressure, and back pain; and a GAF[6] of 50 indicating serious
symptoms.  Tr. 224.

Dr. Roman opined Plaintiff may have borderline intellectual
functioning and that "it would likely be quite difficult" for
Plaintiff to maintain attention and concentration throughout a
normal work week and workday.  Tr. 224.  Dr. Roman noted
Plaintiff seemed to be "rather avoidant and is embarrassed about
her weight and mood."  Tr. 224.

On January 12, 2012, Dr. Roman completed a Mental Residual
Function Capacity Report for Plaintiff in which Dr. Roman opined
Plaintiff was "markedly limited" in her ability to maintain
attention and concentration for extended periods, to perform
activities within a schedule, to maintain regular attendance, and

---

[6] A Global Assessment of Functioning (GAF) score rates a
person's psychological, social, and occupational functioning on a
hypothetical continuum of mental-health illness.  *See* DSM-1V at
34.

to be punctual within customary tolerances.  Tr. 346-47.
Dr. Roman also opined Plaintiff was "moderately limited" in her
ability to understand, to remember, and to carry out detailed
instructions; to work in coordination with or in proximity to
others without being distracted by them; to complete a normal
workday without interruptions from psychologically-based symptoms
and to perform at a consistent pace without an unreasonable
number and length of rest periods; and to interact appropriately
with the general public.  Dr. Roman opined Plaintiff's prognosis
was poor, but Dr. Roman did not know Plaintiff's onset date even
though she sated Plaintiff's condition has lasted or will last at
least twelve months.  Tr. 347.

     The ALJ acknowledged Dr. Roman's December 2009 evaluation of
Plaintiff and the January 2012 Mental Residual RFC of Plaintiff,
but the ALJ still gave Dr. Roman's opinion "no weight."  Tr. 31.
The AJL noted as of April 2011 Plaintiff's treating physicians
characterized Plaintiff's depression as "mild" and "fairly well
controlled with medication."  Tr. 30, 337.  The ALJ concluded
"there is no explanation for [Dr. Roman's] enhanced assessment of
severity" and found it to be inconsistent with the assessment
Plaintiff's treating physician, Peter B. Schur, Ph.D.  Tr. 30.

     In March 2010 and March 2012 Dr. Schur assigned Plaintiff a
GAF of 55 "indicating moderate symptoms or moderate difficulty in
social, occupational or social functioning."  Tr. 281, 380.  The

ALJ also noted Dr. Roman's January 2012 RFC of Plaintiff took place three years after Dr. Roman's initial evaluation of Plaintiff and was not accompanied by any additional information. Tr. 30.  Moreover, the Court notes the record does not reflect that Dr. Roman examined Plaintiff prior to completing her evaluation of Plaintiff's RFC or that Plaintiff had seen Dr. Roman between her initial evaluation and completion of the RFC form.

The Court concludes on this record that the ALJ did not err when he did not give any weight to the opinion of Dr. Roman because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**II.  Plaintiff's Testimony**

Plaintiff alleges the ALJ erred by failing to give clear and convincing reasons for rejecting Plaintiff's testimony as to her alleged limitations.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80

F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she stopped working in October 2008 because the facility she was working for at the time closed for economic reasons. Tr. 45. Plaintiff testified she is unable to work because her back pain makes it difficult to sit, to stand, or to walk for long periods. Tr. 48. She also stated she has difficulty staying awake during the day due to insomnia. Tr. 48-49. Plaintiff testified she only had three weeks of physical therapy for her back pain and that the physical therapist recommended she use a walker. Tr. 50-51. Plaintiff testified she uses compression socks and keeps her legs elevated twice a day for approximately an hour or two to prevent her legs from swelling and to prevent ulcers from forming. Tr. 52.

Plaintiff also testified she is "severely depressed" and

takes Prozac and another unspecified medication to treat her depression. Tr. 52-53. Plaintiff testified she sleeps, cries, or wants to be alone on days that she is depressed. Tr. 53. Plaintiff stated she has seen a counselor for her depression, but she stopped going approximately one and a half years ago because her counselor thought she "was doing okay." Tr. 54. Plaintiff also testified she has a difficult time focusing, speaking clearly, and communicating with certain people. Tr. 55-59.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but he concluded Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms are not credible. Tr. 30.

The ALJ noted Plaintiff's testimony at the hearing that Plaintiff's counselor advised Plaintiff that she did not need to continue counseling sessions because there was not any further need, and the ALJ found that advice to be consistent with the medical record in which Plaintiff "provided [numerous] representations of her state of mind and the counselor's notation that [Plaintiff] could return as needed if she wanted more sessions." Tr. 30, 343. The ALJ also noted Plaintiff once reported her depression was above a five on a zero-to-ten scale and one week later reported it had decreased significantly. Tr. 30, 343-44.

18- OPINION AND ORDER

The ALJ also found persuasive that Dr. Schur assigned Plaintiff a GAF of 55, which indicates moderate symptoms or moderate difficulty in social, occupational, or academic functioning.  Tr. 30.  Although the record shows at least one provider, Martha Griffith, P.A.-C (Physicians Assistant - Certified), opined a CPAP machine would help Plaintiff "with many different comorbidities in her health," the ALJ noted Plaintiff had not consistently used her CPAP machine.  Tr. 284.  With respect to Plaintiff's back pain, the ALJ noted the only imaging in the record "is quite benign and neurologic examination negative."  Tr. 31.

Plaintiff contends the ALJ erred, in part, because his opinion is based on incorrect facts.  For example, although Plaintiff testified she used a walker, the ALJ stated the record does not reflect physician has prescribed one for Plaintiff.  Tr. 31.  The record, however, reflects even though a walker was not prescribed by any physician for Plaintiff to use on a consistent basis for walking, physical therapist Keith Blackwell, P.T., recommended Plaintiff use a walker for physical-therapy exercises.  *See* Tr. 212.  Accordingly, the ALJ's statement regarding this issue was not in error.  The ALJ also stated Plaintiff testified that she missed multiple appointments due to forgetfulness even though there is not any evidence in the record that she missed any appointments.  The Commissioner concedes,

however, that the record reflects Plaintiff missed one appointment with physical therapist Keith Blackwell, P.T., in December 2009. Tr. 256. Nevertheless, evidence of one missed appointment is inconsistent with Plaintiff's testimony that she missed numerous appointments, and, accordingly, the Court concludes the ALJ's error is harmless.

The Court concludes on this record that the ALJ did not err when he discredited Plaintiff's testimony because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 15th day of August, 2014.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

20- OPINION AND ORDER